UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


CHRISTINA MILLER

     Plaintiff

v.                                    Civil Action No.: 2:03-2325

LIBERTY MUTUAL FIRE INSURANCE COMPANY

     Defendant
_____

LIBERTY MUTUAL FIRE INSURANCE COMPANY

     Counter-claimant

v.

CHRISTINA MILLER

     Counter-defendant


## MEMORANDUM ORDER AND OPINION


     Pending before the court is the motion of
plaintiff/counter-defendant Christina Miller, filed May 13, 2005,
seeking summary judgment on the counterclaim of
defendant/counter-claimant Liberty Mutual Fire Insurance Company
("Liberty Mutual").  Also pending is the motion of Liberty
Mutual, filed May 4, 2005, seeking to dismiss the counterclaim of
Miller to Liberty Mutual's counterclaim.  In the alternative,
Liberty Mutual seeks summary judgment on Miller's counterclaim.

I.

This action arises out of a claim for faulty maintenance that resulted in a single vehicle accident occurring in Charleston, West Virginia, on July 26, 2001.[1]  Miller contends that the accident was the proximate result of the negligent conduct of Liberty Mutual's insured, Sears Roebuck & Company ("Sears") and it employees.  Specifically, Miller asserts that employees of a Sears-owned National Tire and Battery facility in Dunbar, West Virginia, negligently failed to fasten the lug nuts on one of her vehicle's wheels after performing routine tire maintenance.  As a result of the accident, Miller suffered a little over $5,000 in documented medical expenses.

Sears initially decided to handle the incident internally, repairing the property damage to Miller's vehicle. However, Miller retained the Sutter law Firm to prosecute her personal injury claim — a fact communicated to Sears in September 2001.  Sears thereafter elected to make a claim under the policy of insurance it had purchased from Liberty Mutual.

------

[1]Unless otherwise noted, the facts set forth in this section are taken from the court's memorandum order of April 15, 2005, addressing the motion of Liberty Mutual and its adjusters, Kathy Murray and Tori Caprio, for summary judgment.  By that order, Murray and Caprio were granted summary judgment on all of Miller's claims.

Liberty Mutual's claims adjuster, Kathy Murray, was initially assigned to handle the claim.  Subsequent to an investigation overseen by her, Liberty Mutual denied the claim on the stated ground that there was no negligence on behalf of Sears.  That ground, however, was not supported by Liberty Mutual's own investigation which indicated that Sears' employees more likely than not failed to secure the lug nuts.

Subsequent to receipt of the denial, the Sutter law firm withdrew from their representation of Miller.  Miller then retained Tony O'Dell of the law firm of Berthold, Tiano & O'Dell. On July 21, 2003, Tori Caprio, another Liberty Mutual claims adjuster, completed a negotiation plan concerning Miller's claim. Caprio estimated full liability, absent an assessment of comparative negligence, on Miller's claim to be between $10,553.15 and $13,553.15.  Factoring Miller's comparative negligence at 50%, she estimated liability between $5,276.51 and $6,151.57.  That same day, Caprio contacted O'Dell and offered $5,000.00 to settle the action with the possibility of $1,000.00 more.  O'Dell stated that his bottom line was $15,000.00 and the settlement discussions concluded unsuccessfully.

On July 25, 2003, Miller filed this action in the Circuit Court of Kanawha County, West Virginia, against Sears and

3

Charles Adkins, a West Virginia resident.  She also sued Liberty Mutual, Murray and Caprio, alleging that during the handling of her claim Liberty Mutual and its adjusters had engaged in unfair settlement practices as set forth in West Virginia's Unfair Trade Practices Act, W. Va. Code § 33-11-4(9) ("UTPA").

After the action was commenced, the file was assigned to Wally Bruneau.  The factual predicate for both of the pending motions is based upon the handling of Miller's claim from August 2003 through September 2003.

Upon his review of the file, Bruneau decided that "the most cost effective thing to do was to try to settle all the claims involved in the file," including the bad faith claims.  Dep. Bruneau at pp. 9-10.  At that time, he was aware that a demand had been made for $15,000 and that such demand encompassed only the underlying claims against the insureds — Sears and Adkins.  Id. at p. 12.  He was not aware of a demand having been made concerning the bad faith claims.  Id. at p. 11.

On or about August 28, 2003, Bruneau contacted O'Dell.  In response to O'Dell's questioning, Bruneau testifed to the substance of the August 28, 2003, conversation as follows:

Q.  Okay.  And after suit was filed, that demand remained open?

**4**

A.  Yes.  As you and I discussed, it had remained open,
yes.

Q.  And you made a decision to settle this case for the
demand that was made prior to the suit being filed?

A.  We discussed it, you and I, and you actually made a
demand of 25, and I reminded you that you had made a
demand of 15, and I settled - - I said I wanted to
settle all claims, and you finally said - - there was a
day that went by, and you called me back or I called
you back.  I countered with 10 when you said 25.

You said your client's bottom line was 15.

And I said, "This is for all claims?"

And You said, "Yes."

Id. at pp. 12-13.  Bruneau stated that it was his "absolute

belief" that the proposed settlement included the bad faith

claims.  Id. at p. 121.

Bruneau spoke with his supervisor the next day, August

29, 2003, and received authority to resolve all of Miller's

claims for $15,000.  Id. at p. 13.  That same day he contacted

O'Dell.  In response to questions from defense counsel, Bruneau

testified as follows:

Q.  All right.  Now, looking at the next note where you
talked with Mr. O'Dell the next day [August 29], what
happened in that next phone call?

A.  I called him, and I told him I would be willing to
settle the underlying claim for 15K with the
understanding and agreement that the claims against
Liberty Mutual, Kathy Murray, and Tori Caprio would
likewise be dismissed, to make sure we had an agreement

5

on that.  He said he changed his mind.

Q.  Did he use those words?

A.  He said, "No, I decided to go forward against
Liberty."  I assumed he changed his mind when he said
that because it was not my agreement that we had the
day before, not at all.  He said, "No, I decided to go
forward as against Liberty, Miss Murray and Miss
Caprio,"

Q.  And then what else was said?

A.  I told him, I said, That's not my understanding of
our conversation yesterday."

    And he said he had changed his mind.  That's
exactly what he said.

Id. at pp. 122–23.  Bruneau was "flabbergasted" by this turn of

events.  Id. at p. 129.  He informed O'Dell that the $15,000 was

off the table inasmuch as the deal was different than that

discussed the day before.  Id. at p. 123.


    On September 2, 2003, O'Dell sent a letter to Bruneau

concerning the conversations of August 28 and 29, 2003.  Pl.'s

Resp. Mot. Dismiss Pl.'s Countercl. at Ex. D.  Of the August 28,

2003, conversation, O'Dell wrote:

    You called me again on August 28, 2003, and we spoke
    regarding the above-referenced claim.  At that time,
    you inquired as to whether the plaintiff is willing to
    settle her case for Fifteen Thousand Dollars ($15,000).
    I advised you that the plaintiff is willing to settle
    her underlying claim for the amount of Fifteen Thousand
    Dollars, but that the plaintiff is not willing to
    dismiss the West Virginia UTPA claims as part of that
    settlement.

6

**Id.**  Concerning the August 29, 2003, conversation, O'Dell stated:

> On August 29, 2003, you contacted me by telephone and indicated that Liberty Mutual was willing to pay Fifteen Thousand Dollars in order to settle the entire case, including the direct claims against Liberty Mutual and its claims adjusters.  I advised you once again that my client is willing to settle the underlying claim for Fifteen Thousand Dollars in return for a release of Sears d/b/a NTB Tire, and the Sears employees who are referenced in Count I of the Complaint.  You indicated to me that if the plaintiff is not willing to dismiss the entire case in return for a settlement of Fifteen Thousand Dollars, including the direct claims against Liberty Mutual and the claims adjusters, then Liberty Mutual is not willing to pay Fifteen Thousand Dollars to the plaintiff.

**Id.**  O'Dell reiterated that his client was willing to accept $15,000 in settlement of her underlying claims.

On September 3, 2003, Bruneau contacted O'Dell and accepted the offer of settlement concerning Liberty Mutual's insureds.[2]  Pl.'s Reply Mot. S.J. on Def.'s Countercl. at Ex. F. Of that conversation, Bruneau testified as follows:

---

[2]The unredacted portion of Bruneau's claims log entry for September 3, 2003, states that:

> I called plaintiff Atty. and we agreed to settle this underlying case as against Sears, NTB, John Doe and Charles Adkins for 15K.  I told him I'd contact assigned cou[n]sel, Michael Moore to tie up the loose ends.  I called Michael Moore and LMOVM asking him to wrap the underlying case up with plaintiff atty. to include releasing Sears, NTB, Charles Adkins and John Doe.

Pl.'s Reply Mot. S.J. on Def.'s Countercl. at Ex. F.

Q.  On September 3rd of 2003, we obviously had a
meeting of the minds, did we not?

A.  Another one, yes.

Q.  On September 3rd, 2003, both sides knew what they
were getting, didn't they; there was no question?

A.  Yes.

Q.  That the underlying claim was being settled for
$15,000 and that the plaintiff was going to go
[forward] with her bad faith claim, correct?

A.  Correct.

Q.  And you understood that?

A.  Yes.

Dep. Bruneau at pp.  131–32.

On September 5, 2003, a check in the amount of $15,000
was issued by Liberty Mutual and made payable to Berthold Tiano &
O'Dell and Miller.  Pl.'s Mot. S.J. on Def.'s Countercl. at Ex.
C.  On September 12, 2003, Joanna I. Tabit of the law firm of
Steptoe & Johnson filed an answer to Miller's complaint on behalf
of Liberty Mutual, Murray and Caprio.

On September 23, 2003, W. Michael Moore, counsel for
Sears and Adkins, forwarded a "Complete Release and Settlement
Agreement" to O'Dell.  Id. at Ex. A.  By letter dated September
24, 2003, O'Dell indicated to Moore that he had reviewed the
proposed agreement, offering the following criticism:

8

> I believe the language in your proposed Release is too
> broad, and is therefore unacceptable.  The Release even
> goes as far as to discharge any claims against Sears'
> insurer, which was not agreed to by the plaintiff in
> this case.  In fact, claims against Liberty Mutual and
> its adjuster[s] were specifically reserved.

Id. at Ex. B.  O'Dell enclosed a proposed settlement document

titled "Release of Claims" (the "Release") which included the

following language:

> It is further understood by the party that Christina
> Miller hereby reserves unto herself her claims against
> Liberty Mutual Fire Insurance Company, Kathy Murray,
> and Tori Caprio, which are the subjects of Counts II
> and III in Civil Action No. 03-C-1831, pending in the
> Circuit Court of Kanawha County, West Virginia.

Id.  O'Dell believed that the language in the Release more

appropriately reflected the terms of the parties' agreement.  Id.

The Release was found acceptable by Moore and the

settlement check was forwarded by Moore to O'Dell.  Id. at Ex. C.

On September 29, 2003, Miller executed the Release.  Id. at

Ex. D.  In addition to purportedly reserving her rights against

Liberty Mutual, Murray and Caprio, Miller acknowledges, in the

Release, receipt of the $15,000 and relinquishes her claims

against Sears, Adkins and John Doe.  Id.  The Release also states

that:

> It is understood and agreed that this settlement is the
> compromise of a disputed claim and the payment
> hereunder is not to be construed as an admission of
> liability on the part of Sears Roebuck & Company d/b/a

9

> NTB-National Tire and Battery, Charles Adkins or John
> Doe, by whom liability is expressly denied and who
> intend thereby merely to avoid litigation and buy their
> peace.

Id.

An agreed partial dismissal order was presented in the
circuit court by Moore and O'Dell and entered on October 10,
2003.  That order announces that Miller's claims against Sears
and Adkins have been "compromised, settled, and agreed" and that
such claims are dismissed "with prejudice."  Id. at Ex. E.  Moore
executed the order on behalf of Sears and Adkins.  Id.  The order
was not circulated to Liberty Mutual's counsel, Tabit, for her
signature prior to the submission of that order to the circuit
court.  Subsequent to the entry of the dismissal order, the
action was removed to this court.

Based on the alleged oral contract of settlement
arising from the August 28 and 29, 2003, discussions between
Bruneau and O'Dell, Liberty Mutual filed a motion on September 9,
2004, seeking leave to amend its answer to assert a counterclaim
against Miller alleging breach of contract and breach of the duty
of good faith and fair dealing.  Liberty Mutual's motion was
granted by the court on April 14, 2005, and Liberty Mutual served
its counterclaim the next day.  Miller answered the counterclaim

10

on April 25, 2005, filing in that answer a four-count counterclaim to Liberty Mutual's counterclaim.  Miller's counterclaim asserts that Liberty Mutual, in pursuing its counterclaim, breached the Release, breached the duty of good faith and fair dealing inherent in the Release and committed fraud in inducing her to enter into the Release.  The final count is for punitive damages based on the substantive causes of action for breach of the duty of good faith and fair dealing and fraud.

Liberty Mutual seeks to dismiss Miller's counterclaim, contending that it was never a party to the Release.  It also asserts that Miller's fraud claim is not pled with the requisite specificity required under Rule 9(b) of the Federal Rules of Civil Procedure.  In the alternative, Liberty Mutual seeks summary judgment on Miller's counterclaim.

In response and for her motion for summary judgment on Liberty Mutual's counterclaim, Miller asserts that Liberty Mutual was a party to the Release inasmuch as Bruneau negotiated a settlement of the underlying claims, Liberty Mutual provided the consideration for the Release, and Moore, an attorney hired by Liberty Mutual, agreed to the language of the Release.  She contends that the August 28 and 29, 2003, discussions were simply a small chapter of the larger settlement negotiations culminating

11

in the Relase and as such those discussions constitute parol
evidence not admissible to rebut, interpret or explain the terms
of the Release.  She further asserts that the August 28 and 29,
2003, discussions are not sufficient evidence of the making of an
oral contract.  Even if the discussions of August 28 and 29,
2003, created contractual rights in favor of Liberty Mutual,
Miller argues that Liberty Mutual's acquiescence to the Release
and to litigation of Miller's UTPA claims for approximately a
year prior to moving to enforce such rights should either estop
Liberty Mutual from asserting those rights or give rise to a
finding that Liberty Mutual has waived those rights.

II.

A party is entitled to summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."

12

Fed. R. Civ. P. 56(c).[3]  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th

---

[3]Liberty Mutual's motion is made under Rule 12(b)(6) or alternatively under Rule 56.  If extraneous evidence is considered by the court and is not referenced or incorporated in the complaint, the court should either exclude such evidence or convert the motion to one for summary judgment.  See Fed. R. Civ. P. 12(b).  Inasmuch as Liberty Mutual's filing places both parties on notice that the motion may be converted and inasmuch further as both parties have cited evidence obtained through discovery, the court converts Liberty Mutual's motion to one for summary judgment.  Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985).

Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III.

A.  Miller's Motion For Summary Judgment.

    1.  Contract Formation.

        The law favors compromise of disputes.  Devane v.
Kennedy, 519 S.E.2d 622, 630 (W. Va. 1999).  "It is well-
established that settlement agreements are contracts and
therefore, 'are to be construed as any other contract.'"  Sanson
v. Brandywine Homes, Inc., 599 S.E.2d 730, 734 (W. Va. 2004)
(citation omitted).  A meeting of the minds is "'sine qua non of
all contracts.'"  Burdette v Burdette Realty Improvement, Inc.,
590 S.E.2d 641, 645 (W. Va. 2003) (quoting Syl. Pt. 4, Riner v.
Newbraugh, 563 S.E.2d 802 (W. Va. 2002); Bailey v. Sewell Coal
Co., 437 S.E.2d 448, 450 (W. Va. 1993) ("[i]t is elementary that
mutuality of assent is an essential element of all contracts.").
The West Virginia Supreme Court of Appeals has stated that:

        In order for this [meeting of the minds] or mutuality
        to exist, it is necessary that there be a proposal or
        offer on the part of one party and an acceptance on the
        part of the other.  Both the offer and acceptance may
        be by word, act or conduct that evince the intention of
        the parties to contract.  That their minds have met may
        be shown by direct evidence of an actual agreement or
        by indirect evidence through facts from which an
        agreement may be implied.

Bailey, 437 S.E.2d at 450-51.  The question of whether the minds

15

of the parties have met is ordinarily one for the jury's
consideration.  Conley v. Johnson, 580 S.E.2d 865, 868 (W. Va.
2003).

> By order entered April 14, 2005, the court noted that:

> Bruneau's testimony, which evidences both an offer and
> an acceptance, may suffice to establish the existence
> of a contract and plaintiff's refusal communicated by
> O'Dell to abide by the terms may suffice to establish a
> breach thereof.

April 14, 2005 Order at p. 12.  Miller characterizes the
referenced testimony as "Bruneau's mistaken belief," noting that
her prior attorney, O'Dell, "corrected" Bruneau in a letter dated
September 2, 2003.  This letter, however, merely demonstrates
that the parties dispute the gist of the discussions which took
place on August 28 and 29, 2003.  Whose verison is more credible
is a question that is properly left for a jury to determine.

> Miller nevertheless contends that the discussions of
August 28 and 29, 2003, are irrelevant inasmuch as the Release
was the final integrated settlement agreement.  The testimony of
Bruneau cited by Miller, however, does not lend itself to the
proposition that the Release was the only contract formed by the
parties.  Rather, Bruneau testifies that the Release reflected
"another" meeting of the minds.  Moreover, as discussed in the
next section, nothing in the Release or in Bruneau's testimony

binds Liberty Mutual as a party to the Release.  The court finds
that a genuine issue of material fact exists as to whether the
discussions of August 28 and 29, 2003, created an oral agreement
of settlement.

     2.  <u>Parol Evidence Rule.</u>

     Miller contends that the parol evidence rule operates
to bar any evidence of the alleged August 28 and 29, 2003,
agreement.  The West Virginia Supreme Court of Appeals has stated
that:

> West Virginia law regarding application of the parol
> evidence rule is well-settled.  "[W]here the terms of a
> written instrument are unambiguous, clear and explicit,
> extrinsic evidence of statements of any of the parties
> to it made contemporaneously with or prior to its
> execution is inadmissible to contradict, add to,
> detract from, vary or explain its terms, in the absence
> of fraud, accident or mistake in its procurement."
> Conversely, the law does provide that parol evidence
> may be used to explain uncertain, incomplete, or
> ambiguous terms.

<u>Yoho v. Borg-Warner Chemicals</u>, 406 S.E.2d 696, 697 (W. Va. 1991)
(citations omitted).  "It is abundantly clear that the parol
evidence rule is applicable as between the parties to a release
when its terms are clear and unambiguous."  <u>Haymaker v. General
Tire, Inc.</u>, 420 S.E.2d 292, 294 (W. Va. 1992).  The court,
however, has held that parol evidence may be used to interpret a
release in actions between a party to the lease and a stranger

17

thereto.  Id.  Because Liberty Mutual was intimately involved in
the negotiations resulting in the Release, Miller contends that
Liberty Mutual is bound as a defacto party to the Release.

        The court does not agree.  "When an insurer acts on
behalf of the insured in the conduct of the litigation and
settlement of claims, it assumes a fiduciary relationship and is
obligated to act in good faith.  As the champion of the insured,
the insurer must consider the insured's interests as paramount
rather than its own, and it may not gamble with the insured's
funds."  Eric Mills Holmes, 22 Holmes' Appleman on Insurance 2d
§ 137.1[B][3] (2002).  As Holmes' treatise on insurance notes,
the courts have not uniformly defined the capacity in which an
insurer acts when settling an action, with some suggesting that
an insurer acts as an independent contractor and others holding
that an insurer acts as agent.  Id. at § 137.2[K].

        In the context of settlement of third-party claims, the
West Virginia Supreme Court of Appeals has characterized the
insurer-insured relationship as follows:

    [T]he relationship between an insurer and a third-party
    claimant in a settlement process is adversarial.
    "[T]hat the insurer is the representative of the
    insured logically imports that the third-party tort
    claimant's status as the adversary of the insured
    renders him, ipso facto, the adversary of the insured's
    agent."  Linscott v. State Farm Mutual Auto. Ins. Co.,

18

368 A.2d 1161, 1163-64 (Me. 1977). "[T]he insurer
stands in the shoes of the insured in dealing with the
victim." Long v. McAllister, 319 N.W.2d 256, 262 (Iowa
1982).

Elmore v. State Farm Mutual Auto. Ins. Co., 504 S.E.2d 893, 899

(W. Va. 1998). According to Elmore, the insurer is considered an

agent of the insured when conducting settlement negotiations with

a third party and it is well settled that an agent acting within

the scope of his actual authority is ordinarily not personally

liable on a contract binding his principal.[4] Davis v. Fisher,

111 S.E. 155, 157 (W. Va. 1922); Central Trust Co. v. Virginia

Trust Co., 197 S.E. 12, 19 (W. Va. 1938).

        Miller's reliance on the parol evidence rule fails for

two reasons. First and foremost, Liberty Mutual, in asserting

_____

    [4]Miller cites Haluka v. Baker, 34 N.E.2d 308, 313 (Ohio App.
1941) and Cash v. State Farm Mut. Auto. Ins. Co., 528 S.E.2d 372
(N.C. App. 2000), for the proposition that an insurer is not an
agent of the insured when conducting settlement negotiations.
Haluka appears to stand for the unremarkable proposition that
where a principal, the insured, has by contractual arrangement no
control over the conduct of the litigation he will not be
individually liable in the event of the insurer's default for any
settlement reached without his consent or subsequent
ratification. Cash, while stating that an insurer is not an
agent of an insured, qualifies that statement by the very next
sentence which states that "[a]n insurance company, if it admits
that its insured is liable, without its insured's knowledge or
consent, is acting in its own interest and not as an agent of the
insured." 528 S.E.2d at 379. These cases from intermediate
appellate courts of foreign jurisdictions decided under the
relevant jurisdiction's law are not persuasive here.

the counterclaim, is not seeking to use parol evidence to interpret a term of the Release.  Rather, Liberty Mutual contends that the discussions of August 28 and 29, 2003, created a separate and independent contract and breach thereof.  As noted, accepting the evidence in a light most favorable to Liberty Mutual, Bruneau's testimony raises a genuine issue of material fact as to whether the discussions of August 28 and 29, 2003, created an oral contract.

Miller nevertheless contends that Liberty Mutual was bound to the terms of the Release.  Contrary to Miller's representations, the evidence indicates a settlement was intended only to bind Miller and the insured.  Although the check was issued from Liberty Mutual on behalf of the insured, the check represents the fulfillment of an independent contractual obligation owed to the insured under a separate contract.  The negotiations cited between O'Dell and Moore occurred after Liberty Mutual had retained its own counsel who entered an appearance in the action.  Moreover, Moore's professional obligations were owed solely to Liberty Mutual's insureds.  Furthermore, although Miller may have sought in the settlement documentation a written expression of Liberty Mutual's intent, Liberty Mutual is not a signatory to the Release and has not

20

otherwise bound itself to the terms of the Release.  Indeed, the final writing concluding the settlement, the dismissal order, was signed only by counsel for Miller and the insureds and not by counsel for Liberty Mutual.

At best, under West Virginia law, the Release is a separate contractual arrangement negotiated to a degree by Liberty Mutual in fulfillment of contractual and fiduciary obligations arising from a separate contract of insurance with its insured.  Any interest Liberty Mutual has in the Release is negligible as the Release is made for the sole benefit of Liberty Mutual's insureds.  Inasmuch as Liberty Mutual is an agent with no interest at stake in the Release and inasmuch further as Liberty Mutual has not expressly consented to bind itself to the terms of the Release, Liberty Mutual is not a party to the Release and the parol evidence rule does not operate to bar evidence of a separate contractual agreement to which Liberty Mutual was a party.[5]

---

[5]Inasmuch as the alleged oral contract of August 28 and 29, 2003, purports to resolve Miller's direct claims against Liberty Mutual and its adjusters, Liberty Mutual would be a party entitled to enforce the contract.

21

3.   <u>Waiver and Estoppel.</u>

Miller contends that, even if Liberty Mutual was not a party to the agreement, its subsequent actions either waived the counterclaim or should be found to estop the counterclaim.  The basis for both her waiver and estoppel arguments is the delay during the course of this litigation by Liberty Mutual in asserting its contractual rights, if any, arising from the alleged oral contract.  Inasmuch as the court has, after due consideration, allowed Liberty Mutual to file the counterclaim and has set it for trial, the essence of Miller's waiver and estoppel arguments have already been considered and rejected. The court finds summary judgment in favor of Miller is not warranted on either defense.

B.   <u>Liberty Mutual's Motion to Dismiss or in the Alternative for Summary Judgment.</u>

Miller has asserted a four-count counterclaim.  Count I, a breach of contract claim, is predicated on the concept that Liberty Mutual was a party to the Release.  Inasmuch as the court has found that Liberty Mutual was not a party to the Release, the court grants summary judgment on that count.  Count II alleges that Liberty Mutual breached the duty of good faith and fair dealing inherent in the Release.  To the extent that this count

22

is predicated on the Release, Liberty Mutual was not a party to
it and the Release may not form the basis of liability.  To the
extent Miller may contend that a common law duty exists separate
and apart from the Release, the West Virginia Supreme Court of
Appeals has stated that:

> The significant duty owed by the insurer to the insured
> certainly forecloses any like duty owed by the insurer
> to a third party who is the adversary of the insured.
> An insurer cannot logically owe a duty of good faith
> and fair dealing to the insured and a fiduciary duty to
> an adversarial third party in the same manner.

Elmore, 504 S.E.2d at 899.  The court finds that Liberty Mutual
is entitled to summary judgment on Count II.

        Miller's final substantive count is one for fraud
alleged in Count III.  Under West Virginia law, "[t]he essential
elements in an action for fraud are: '(1) that the act claimed to
be fraudulent was the act of the defendant or induced by him; (2)
that it was material and false; that plaintiff relied upon it and
was justified under the circumstances in relying upon it; and (3)
that he was damaged because he relied upon it.'" Syl Pt. 1,
Lengyel v. Lint, 280 S.E.2d 66 (W. Va. 1981) (citing Horton v.
Tyree, 104 W.Va. 238, 242, 139 S.E. 737 (1927)).  "Actual fraud
is intentional, and consists of intentional deception to induce
another to part with property or to surrender some legal right,
and which accomplishes the end designed."  Stanley v. Sewell Coal

23

<u>Co.</u>, 285 S.E.2d 679, 683 (W. Va. 1981).

Here, Miller asserts the following basis as the gravamen of her fraud claim:

> 27.   During the settlement negotiations described herein, Defendant Liberty Mutual, through its representatives and retained counsel, indicated its acceptance of Plaintiff's reservation of her right to proceed against Liberty Mutual for bad faith and violations of West Virginia's Unfair Trade Practices Act and induced the Plaintiff to enter into a settlement agreement and sign the September 29, 2003 Release of Claims in reliance upon such representations.

> 28.   Liberty Mutual's representations, made through its agents and representative with regard to Liberty Mutual's acceptance of the Plaintiff's reservation of her bad faith claims were materially false to the extent that Defendant Liberty Mutual Fire Insurance Company never intended to enter into a settlement on such terms and expected to file its Counterclaim seeking damages from the Plaintiff if she persisted in pursuing her claims.

Pl.'s Counterclaim at ¶¶ 27-28.  Plaintiff claims that Liberty Mutual's counsel negotiated the reservation of rights language in an exchange of letters between September 23, 2005, and September 25, 2003.

This claim is without basis.  The alleged misrepresentation which Miller would charge to Liberty Mutual was actually negotiated between Tony O'Dell, her counsel, and Michael Moore, counsel for Sears who was Liberty Mutual's insured.

24

Moore's allegiance was owed to Sears not to Liberty Mutual.
Moreover, the court has found that Liberty Mutual was not a party
to the Release.  The language in the Release is thus not
attributable to Liberty Mutual.

Moreover, fraud here requires the surrender of a legal
right.  The legal right which Miller claims she surrendered was
her underlying cause of action against Sears and its employees.
She contends that she surrendered that right by entering into the
Release and she did so specifically on the representation that
her UTPA claims against Liberty Mutual would be preserved.  Of
course, confirmation that the oral contract existed as of August
29, 2003, would establish that Miller did not have the very right
she claims was subsequently surrendered in the Release, having
already surrendered that right as well as her rights against
Liberty Mutual as consideration supporting the oral contract.  If
however the oral contract never existed, the "consideration" for
which she surrendered her underlying claim still exists.  For
this reason as well, Liberty Mutual is entitled to summary
judgment.

Inasmuch as Count IV, a punitive damages request, is
predicated on the availability of punitive damages under Counts
II and III which are to be dismissed for the reasons just noted,

25

Liberty Mutual is entitled to summary judgment on that count as well.  Liberty Mutual is thus entitled to summary judgment on all of Miller's claims set forth in her counterclaim.

IV.

Liberty Mutual has moved on June 16, 2005, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against Miller for the filing of her counterclaim.  By signing a pleading, motion or other paper filed with the court, both the attorney and the party are representing to the court that, after reasonable inquiry, the signed paper meets the following standards:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).  Subsection (c) of Rule 11 provides that a

26

party may move for sanctions after affording the adverse party notice and a 21-day period in which to withdraw the offending pleading and such motion "shall describe the specific conduct alleged to violate subdivision (b)." Id. at 11(c).

Liberty Mutual contends that the counterclaim was not warranted by existing law and was interposed for the improper purpose of pressuring it into settling the action.[6] After careful consideration, the court concludes that sanctions are not warranted. Although the court has found Miller's counterclaim subject to summary judgment in favor of Liberty Mutual, it does not follow that the basis for Miller's claims were so lacking in legal and factual merit as to be frivolous. Indeed, Miller identified evidence which tended to show that Liberty Mutual was more than a passive actor in the settlement negotiations, having participated in the negotiations for the financial settlement although not in the Release. Moreover, Miller identified case law from other jurisdictions which support the legal position that an insurer is not an agent of the insured and, therefore,

---

[6]The motion also refers to the third-party defendant Sears. The motion is not brought on Sears' behalf. It is also noted that plaintiff has not responded to the motion which was filed only three business days ago. Inasmuch as the court has sufficient information before it to determine the motion, the court finds a response from the plaintiff is not necessary.

the insurer is presumably bound to any representations it makes during the course of settlement negotiations on behalf of an insured as if a principal.  While the court found <u>Elmore</u> dispositive on that point, there are enough factual distinctions between <u>Elmore</u> and this action to warrant the making of the legal argument posited by plaintiff.  The court thus concludes that sanctions are inappropriate.

V.

For the reasons set forth, it is accordingly ORDERED that:

1.  Plaintiff Christina Miller's motion for summary judgment be, and it hereby is, denied.

2.  Defendant Liberty Mutual Fire Insurance Company's motion, to the extent it seeks summary judgment, be, and it hereby is, granted.

3.  Defendant Liberty Mutual Fire Insurance Company's motion seeking sanctions pursuant to Rule 11 be, and it hereby is, denied.

28

The Clerk is directed to forward copies of this written opinion to all counsel of record.

DATED: June 21, 2005

John T. Copenhaver, Jr.
United States District Judge